UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LUANNE ESPOSITO,

       Plaintiff,

v.                           Case No. 8:14-cv-2414-T-33EAJ

ANTHONY STONE and LESLIE BRADY,

       Defendants.

_____/

## ORDER

This matter comes before the Court pursuant to Defendants Anthony Stone and Leslie Brady's Amended Motion for Summary Judgment (Doc. # 41), filed on July 13, 2015. Plaintiff Luanne Esposito filed a Response in Opposition to the Motion (Doc. # 42) on July 27, 2015. For the reasons that follow, the Court denies the Motion.

## I.  Background

Esposito, a retired law enforcement officer, celebrated the birthday of a friend with dinner and drinks on June 6, 2012. (Esposito Aff. Doc. # 42-1 at ¶¶ 2-3). On that evening, law enforcement officers responded to a "possible burglary" at an apartment complex and encountered Esposito. (Police Report Doc. # 41-1 at 3). Esposito had not perpetrated the burglary; however, she ended up being placed under arrest that evening.

The Police Report indicates, "Once making contact with Ms. Esposito we immediately determined she was extremely

intoxicated.   Ms. Esposito had great difficulty walking or standing on her own power." (Id.)   In addition to noting Esposito's intoxicated state, the Police Report describes Esposito as "aggressive" and "threatening:"

> [D]uring the course of the encounter Ms. Esposito approached three separate times, all of which I was forced to verbally advise Ms. Esposito to step back from my person as she was becoming aggressive by her actions.   Ms. Esposito then turned her attention to Officer Rhind and walked towards him in a hostile manner.   Officer Rhind used one hand to stop Ms. Esposito's actions and push her back from his person. . . .   Ms. Esposito took approximately two steps to her rear and then began to approach Officer Rhind again.   I observed Ms. Esposito's actions were hastened as she moved toward Officer Rhind in what I felt was a threatening manner.   I observed Ms. Esposito's right arm angled at a 90 degree angle as she approached Officer Rhind, therefore leading me to fear Ms. Esposito was going to strike Officer Rhind.   I reached out and detained Ms. Esposito's arms to stop her actions.   I advised Ms. Esposito she was going to be detained due to her actions, however, she attempted to pull away from my grasp. Ms. Esposito then physically attempted to jerk her arms away from my grasp as I attempted to place her into handcuffs.   Ms. Esposito continued to resist my actions to detain her, and on multiple trys [sic] she attempted to free her arms from my grasp. Ms. Esposito then began to turn her body to gain an advantage, therefore I redirected Ms. Esposito to the ground where I handcuffed her without incident.

(Id. at 3-4).   Esposito was arrested for assault on a law enforcement officer. (Id. at 3).

Esposito, who was 54 years old at the time of the incident, does not dispute that she was "very drunk" at the

2

time of her arrest. (Esposito Recorded Statement Doc. # 41-2 at 3-4).[1] She remarked that she was "really drunk," "very, very intoxicated" and "drunk as drunk could be." (Id. at 4, 21).

After being handcuffed, Esposito was placed in the back of a police car and driven to the Manatee County Jail. (Transport Video Doc. # 41-3). The Court has viewed and listened to the recordings of Esposito during that drive. Initially, Esposito screamed, moaned, and wailed loudly. (Id.). Thereafter, she passed out in the back of the police car due to her drunken state: "I was so drunk that I fell asleep and woke up at the Port Manatee jail." (Esposito Recorded Statement Doc. # 41-2 at 4). Upon awaking, Esposito repeatedly antagonized the arresting officer who was driving the police car by screaming at her to "go fuck yourself," inquiring "what the fuck is wrong with you," and calling her a "stupid fucking whore," among other pernicious remarks. (Transport Videos Doc. # 41-3). The parade of insults culminates in Esposito declaring that the arresting officer is

---

[1] In each Recorded Statement before the Court, the interviewee answers in the affirmative to the question: "Do you swear or affirm that the evidence you're about to give will be the truth, the whole truth, and nothing but the truth." See e.g. Esposito Recorded Statement Doc. # 41-2 at 1.

3

"the worst fucking whore I ever met in my whole life." (<u>Id.</u>).

At this point, the audio recordings end and video surveillance of Esposito in the jail begins. (Jail Videos Doc. # 41-4). Unlike the transport videos, the video surveillance inside the jail does not contain any audio recordings. However, the silent videos depict Esposito sitting in a holding cell (cameras 2, 3), sitting on a bench (cameras 4, 5), being fingerprinted (camera 6), consulting with a nurse (camera 8), using the telephone (camera 9), being escorted down various hallways (cameras 10, 11, 15), and partaking in other activities attendant to being arrested and jailed. (<u>Id.</u>). Some of the videos depict many law enforcement officers holding Esposito up and then forcing her to the ground. (cameras 15-17). The videos also depict Esposito strapped into a restraint chair. (cameras 18, 19). The Court recognizes that the videos did not capture some of the events in question and that a server was "down" for cameras 12, 13, and 14. (Jail Video Doc. # 41-1).

Esposito has filed an affidavit in which she claims that Officer Stone "sucker punched" her in the left eye, knocking her to the ground, while she was being fingerprinted. (Esposito Aff. Doc. # 42-1 at ¶ 4). She underscores that at the time of the alleged attack, she was not resisting and that

4

she had not provoked the incident in any way. (<u>Id.</u>). Esposito also maintains that "while [she] was on the ground, Officer Stone began punching [her] repeatedly to the point where [she] briefly blanked out. . . . Officer Brady also jumped in, forcefully slamming [her] face into the cement floor, and also punching [her] repeatedly, all while Officer Stone continued to punch [her]." (<u>Id.</u> at ¶¶ 5-6). Esposito also states that "[a]fter Officers Stone and Brady beat me up, I was then escort[ed] by a group of corrections officers, including Officers Stone and Brady, but slammed to the ground again for no reason. Several corrections officers jumped on me while I was on the ground, and were laying on me while I was being hit repeated[ly] in my body and legs." (<u>Id.</u> at ¶ 7).

Esposito also asserts that she was "tightly handcuffed, shackled and strapped into [a] restraint chair for almost four and one-half hours." (<u>Id.</u> at ¶ 10). She remarks that she was "unable to move anything other than [her] head, fingers, and toes." (<u>Id.</u>). She alleges that while immobilized in a restraint chair, "on at least five occasions, Officer Stone returned to the room where [she] was strapped into the restraint chair and *forcefully* shoved [her] head down, with [her] face toward [her] chest, causing [her] to experience significant physical pain." (<u>Id.</u> at ¶ 12)(emphasis in

5

original).

Esposito swears in her affidavit that

At no point while at the Manatee County Jail was I
combative.  At no point while at the Manatee County
Jail was I violent or aggressive towards any of the
corrections officers, including Officers Stone and
Brady.  At no point while at the Manatee County
Jail did I resist Officers Stone, Brady, or any
other Manatee County corrections officers. I was
compliant to all orders and directives while at the
Manatee County Jail.  At no point did I self-
inflict any of my injuries or bruises.  At no point
did it take six corrections officers to subdue me;
instead,  six  corrections  officers,  including
Officers Brady and Stone, forced me to the ground
without cause.

(Id. at ¶ 21).

In direct conflict with Esposito's assertion that she was

compliant with all law enforcement commands and that she never

resisted, Officer Brady provided a recorded statement in which

he  claims  that  Esposito  called  the  jail  nurse  a  "bitch,"

called Officer Stone a "fucking loser," and refused to remove

her jewelry despite being ordered to do so for safety reasons.

(Brady Recorded Statement Doc. # 41-5 at 5, 9, 10). According

to Officer Brady, Esposito was screaming curse words at the

police officers inside the jail - "getting louder and louder

as we told her to be quiet." (Id. at 10).  Officer Brady

remarked that Esposito was "a lot taller" than him, and that

he struggled to control her as she "tried twisting or pulling,

still continu[ing] to yell and curse and threaten very loudly." (Id. at 11). According to Officer Brady, Esposito "started to slip forward because of pulling away," and therefore, police officers "directed her to the ground to gain control, brought her back up and tried to continue to walk forward, [while] she still resisted the entire time." (Id.).

Officer Brady also commented that Esposito was very strong and that she thrashed her head and her body so uncontrollably that the police decided to put her into a restraint chair so she would not injure herself or others. (Id. at 17). Officer Stone likewise stated that Esposito resisted law enforcement at every juncture and was not compliant. (Stone Recorded Statement Doc. # 41-6 at 3-8).

Esposito filed photos of herself after these incidents, which show bruising and swelling on her face and extremities. (Doc. # 43). She indicates that she received injuries to her entire body, including to her eye, shoulder, ankle, arms, and legs. (Esposito Aff. Doc. # 42-1 at ¶ 22). Apparently, her ankle was fractured, she required surgery on her right hand, and underwent physical therapy for both ankles and both arms for seven months. (Id.). She was required to wear a cast on her right ankle for three months. (Id.). She also describes

mental and emotional anguish. (Id. at ¶ 23).

Ultimately, Esposito entered into a deferred prosecution agreement, and on November 1, 2012, the Assistant State Attorney filed a Notice reflecting that "criminal charges [would] not be filed." (Doc. # 42-3). On September 24, 2014, Esposito filed an action against Officers Brady and Stone (Doc. # 1) and filed a two count Amended Complaint against Officers Brady and Stone pursuant to 42 U.S.C. § 1983 for excessive use of force on October 27, 2014. (Doc. # 12).

At this juncture, the Defendants seek summary judgment. The Motion is ripe for the Court's review.

## II.   __Legal Standard__

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.  <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial."  <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor.  <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003).  If a reasonable fact finder

evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

## III. **Analysis**

Section 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To establish a claim under § 1983, plaintiff must prove that (1) defendant deprived her of a right secured under the Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb Cty., 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). Plaintiff also must prove an affirmative causal connection

10

between defendant's conduct and the constitutional deprivation. Marsh v. Butler Cty., Ala., 268 F.3d 1014, 1059 (11th Cir. 2001) (en banc); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11th Cir. 1995).

Qualified immunity is an affirmative defense to a § 1983 claim. It allows "officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Oliver v. Fiorino, 586 F.3d 898, 904 (11th Cir. 2009). Officials performing discretionary functions are entitled to qualified immunity "[i]n all but exceptional cases." McMillian v. Johnson, 88 F.3d 1554, 1563 (11th Cir. 1996)(citing Lassiter v. Ala. A & M Univ., 28 F.3d 1146, 1149 (11th Cir. 1994)).

In this § 1983 case, it cannot reasonably be disputed that Officers Stone and Brady acted within their discretionary authority and under color of state law, and it does not appear that any party challenges these components of the case. (Doc. # 42 at 14). "Once the defendants establish that they were acting within their discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not

appropriate." <u>Lumley v. City of Dade City</u>, 327 F.3d 1186, 1194 (11th Cir. 2003).

## A.   <u>Did a Constitutional Violation Occur</u>?

Esposito bears the burden of establishing a constitutional deprivation.  Excessive force cases arising out of a pre-trial detention fall under the purview of the Fourteenth Amendment to the United States Constitution. <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1490 (11th Cir. 1996). Whether a constitutional violation occurred is governed by an objective reasonableness standard. <u>Kingsley v. Hendrickson</u>, 135 S. Ct. 2466, 2473 (2015).  The question that must be answered is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their intent or motivation. <u>Id.</u>  The objective reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989).

The <u>Kingsley</u> Court enumerated the following non-exhaustive list of factors that bear on the reasonableness or unreasonableness of an officers use of force: (1) the relationship between the need for the use of force and the

amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force used; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. Kingsley, 135 S. Ct. at 2473.

The Supreme Court has cautioned that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments –in circumstances that are tense, uncertain, and rapidly evolving– about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 369.

It should also be noted that excessive force cases that arise in prisons are treated somewhat differently because, when a prison's internal safety is of concern, courts conduct a more deferential review of the prison official's actions. See Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991). "That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventative measures intended to reduce the incidences of these or any other breaches of prison discipline." Whitley v. Albers, 475 U.S 312, 322 (1986).

### 1.    __Application of the Kingsley Factors__

Esposito states in her affidavit that, during the
fingerprinting process and without provocation, Officer Stone
"sucker punched" her in the eye with such force that she was
knocked to the ground. (Esposito Aff. Doc. # 42-1 at ¶ 4).
Esposito indicates that, while she was on the ground, both
Officer Stone and Officer Brady punched her repeatedly to the
point that Esposito lost consciousness.    (__Id.__ at ¶¶ 5-6;
Esposito Recorded Statement Doc. # 41-2 at 5).  Esposito also
claims that Officer Brady "forcefully slamm[ed] [her] face
into the cement floor" and that both Officer Stone and Officer
Brady "beat [her] up." (Esposito Aff. Doc. # 42-1 at  ¶¶ 6-7).
She also claims that, while she was completely immobilized and
strapped into a restraint chair, Officer Stone forcefully and
painfully slammed her head downward as many as five times.
(__Id.__ at ¶ 12).

Officers Stone and Brady deny that these specific
incidents occurred. (Doc. ## 13, 14).  A jury rather than this
Court, must determine who is telling the truth.   The Court
acknowledges Defendants' argument that the surveillance videos
"discredit" Esposito's version of the facts.   However, the
surveillance videos provided to the Court do not capture every
moment of Esposito's confinement at the Manatee County Jail

and do not contain audio, thus presenting an incomplete picture. In addition to examining the available evidence, which is scant due to limited discovery that took place in this case, credibility determinations must be made, which is the province of a jury.

As explained below, if Esposito's version of the facts is correct, a reasonable juror could find a constitutional violation. First, a reasonable juror could find that the relationship between the need for the use of force and the amount of force used was disproportionate. Esposito claims that she never resisted and that she complied with all commands. Thus, under her version of the facts, the force allegedly utilized – i.e. punching her, pummeling her while she is on the ground, slamming her face into the cement floor of the jail rendering her unconscious, and, in a separate incident, shoving her head downward while she was confined to a restraint chair – were completely gratuitous and unnecessary.

Second, a reasonable juror's consideration of the extent of Esposito's injuries could lead to the determination that a constitutional violation occurred. In a related context, the Supreme Court has cautioned that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a

15

judge's chambers, violates a prisoner's constitutional rights." <u>Hudson v. McMillan</u>, 503 U.S. 1, 9 (1992). However, viewing the evidence in the light most favorable to Esposito, her injuries extend beyond de minimis injuries. According to Esposito, she left the Manatee County Jail with a broken ankle, bruises all over her body, a black eye, and an injury to her hand that required surgery, among other physical and emotional injuries. (Esposito Aff. Doc. # 42-1 at ¶¶ 22 23). Thus, Defendants' reliance on <u>Harvey v. City of Stuart</u>, 296 F. App'x 824, 829 (11th Cir. 2008) (finding that an arrestee's injuries, which amounted to stubbed toes, bruised knee, and a dislocated finger, showed that the force used was de minimis) is unavailing.

Third, a reasonable juror could determine that the efforts made to temper the use of force were constitutionally insufficient. While Defendants argue that they attempted to avoid the use of force by placing Esposito into a holding cell to allow her to calm down, and ultimately placed her in a restraint chair to avoid hands on contact, Esposito's version of the facts brings into question whether any force was justified in the first instance. If Esposito was not resisting, was compliant with all directions from law enforcement, and followed all commands, it does not appear

16

that any use of force, tempered or otherwise, would be
required.  Thus, crediting Esposito's factual allegations, a
reasonable fact finder could determine that a constitutional
violation occurred.

The forth Kingsley factor assesses the severity of the
security problem presented, and the fifth factor examines the
threat reasonably perceived by the officers.  The Supreme
Court has explained that:

> [r]unning a prison is an inordinately difficult
> undertaking, and that safety and order at these
> institutions requires the expertise of correctional
> officials, who must have substantial discretion to
> devise reasonable solutions to the problems they
> face.  Officers facing disturbances are often
> forced to make split-second judgments--in
> circumstances that are tense, uncertain, and
> rapidly evolving.  For these reasons, we have
> stressed that a court must judge the reasonableness
> of the force used from the perspective and with the
> knowledge of the defendant officer.  We have also
> explained that a court must take account of the
> legitimate interests in managing a jail,
> acknowledging as part of the objective
> reasonableness analysis that defense to policies
> and practices needed to maintain order and
> institutional security is appropriate.

Kingsley, 135 S. Ct. at 2474.

Esposito challenges that she posed any threat or was
otherwise a security risk: "Esposito was not accused of a
violent crime, had not engaged in any display of violence, did
not pose an immediate threat to the safety of anyone, complied
with all orders and directives from the correction officers at

17

Manatee County Jail, and there was no evidence indicating that Esposito posed any threat to Officer Stone or anyone else." (Doc. # 42 at 15).

Esposito's "version of the facts" is different from Officer Brady and Officer Stone's descriptions of their various interactions with Esposito. Officer Brady stated that as he attempted to escort Esposito to a "female pod"

> [S]he just started like calling Deputy Stone a . . . fucking loser and she wasn't saying it quietly, it was very loud, she was yelling it.  And she still had her bin in her hand at this point and she's like you fucking loser, I'm gonna fucking, you'll fucking get yours and she's like you're a sorry piece of shit and just kept cursing and cursing and he turned around and he said ma'am, you need to shut your mouth while you're in the hallway.  Just get down to Female pod and you can lay down.  Fuck you, don't you fucking tell me what to do.  I say what the fuck I want and that's exactly what she said. [A]nd she just kept . . . getting louder and louder as we told her to be quiet.

(Brady Recorded Statement Doc. # 41-5 at 10).  Officer Stone also stated that Esposito was "very agitated, intoxicated and uncompliant." (Stone Recorded Statement Doc. # 41-6 at 3).  In addition, Officer Stone claimed that Esposito was "verbally abusive" failed to follow commands and was resistant "[t]he whole entire time." (<u>Id.</u> at 6-8).

As with the other factors examined above, there is a genuine dispute of material fact with respect to whether

Esposito posed a threat to officer safety or presented a security risk.  Viewing all of the evidence in the light most favorable to Esposito, which this Court is required to do at this juncture, the Court determines that a reasonable juror could find that these factors also weigh in favor of finding a constitutional violation.

A genuine dispute as to a material fact also exists with respect to the final Kingsley factor: whether Esposito was actively resisting.  As to this inquiry, Esposito indicates: "At no point while at the Manatee County Jail did I resist Officers Stone, Brady, or any other Manatee County corrections officers. I was compliant to all orders and directives while at the Manatee County Jail." (Esposito Aff. Doc. # 42-1 at 7).

On the other hand, Defendants argue that Esposito resisted at every step of the way from her initial confrontation with law enforcement to being strapped into the restraint chair.  This is a credibility issue that must be decided by a jury.  Crediting Esposito's version of the facts in which she asserts that she never resisted, a reasonable juror could determine that the final Kingsley factor militates in favor of finding a constitutional violation.

**B.   Was   the   Constitutional   Violation   Clearly   Established?**

The Eleventh Circuit has underscored that "When we review a district court's denial of a defendant's motion for summary judgment on qualified immunity grounds, we take the 'facts' in the light most favorable to the plaintiff and determine the legal issue of whether the plaintiff's 'facts', if proven, show that the defendant violated clearly established law. We, however, have repeatedly stressed that the 'facts,' as accepted at the summary judgment stage of the proceedings, may not be the 'actual' facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 926 n.3 (11th Cir. 2000)(internal citation omitted).

The Court has determined that a reasonable jury could find that a constitutional violation occurred. The next inquiry is whether the constitutional violation was clearly established.   In determining whether a right is clearly established, "[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). "For a right to be clearly established, previous case law must have developed it in a concrete factual context so as to make it obvious to a

20

reasonable government actor that his actions violate federal law." <u>GJR Invs., Inc. v. Cty. of Escambia</u>, 132 F.3d 1359, 1366 (11th Cir. 1998).

The Eleventh Circuit has explained, "Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners." <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1490 (11th Cir. 1996). "However, the applicable standard is the same, so decision law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." <u>Id.</u>

These cases uniformly hold that gratuitous use of force against an individual who is not resisting is excessive. <u>See Brown v. City of Huntsville</u>, 608 F.3d 724, 738 (11th Cir. 2010)("Our cases hold that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force"); <u>Reese v. Herbert</u>, 527 F.3d 1253, 1274 (11th Cir. 2008)(plaintiff was thrown face down on the ground where he remained, offering no resistance, however, four defendants piled on top of him and savagely beat him, one pepper spraying the plaintiff. This force was excessive because the Constitution "prohibits . . . a severe beating of a

21

restrained, non-resisting suspect"); <u>Lee v. Ferraro</u>, 284 F.3d 1188 (11th Cir. 2002)(slamming a non-resisting criminal suspect's head onto hood of a car constituted excessive force); <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1303 (11th Cir. 2002)("precedent clearly established that government officials may not use gratuitous force against a prisoner who has been already subdued"); <u>Slicker v. Jackson</u>, 215 F.3d 1225, 1233 (11th Cir. 2000)(force was excessive where officers kicked handcuffed and non-resisting defendant in the ribs and beat his head on the ground); <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1330, 1333-34 (11th Cir. 2008)("Applying the excessive force standard would inevitably lead every reasonable officer to conclude that the forced used here--punching a non-resisting criminal suspect for no apparent reason other than malice--is not protected by our constitution. . . . Therefore, Officer Ortivero's single punch constituted excessive force").

After considering the numerous authorities explaining that police officers may not punch non-resisting arrestees and that unnecessary and gratuitous use of force is unconstitutional, and considering the evidence in the light most favorable to Esposito, the Court must conclude that the constitutional violation alleged was clearly established.

Defendants' motion for summary judgment, including Defendants' request for qualified immunity, is accordingly denied.

In denying summary judgment, the Court underscores that its analysis is based on the version of the facts set forth by Esposito, which drastically and irreconcilably clashes with the version of the facts described by the Defendant Officers. These dramatically differing versions of the events underscore the existence of a genuine issue of material fact. See Feliciano v. City of Miami Beach, 707 F.3d 1244, 1253 (11th Cir. 2013)(noting that such "contradiction presents a classic swearing match, which is the stuff of which jury trials are made"); see also Ramirez v. James, No. 7:11-cv-2789, 2012 U.S. Dist. LEXIS 161575, at *9 (N.D. Ala. Oct. 19, 2012)(summary judgment is not the procedure to resolve swearing matches between parties in excessive force claims as such instead "calls for the fact-finder to examine several factors, including the need for the application of force, the amount of force used in relation to the need, the restraint used in the application of force, and the extent of injuries suffered"). And, even if a district court believes that evidence presented by one side is of "doubtful veracity," it is not proper to grant summary judgment on the basis of credibility choice. Feliciano, 707 F.3d at 1252. The credibility of Esposito's

23

and Defendants' version of events, and the weighing of evidence, are matters for a jury, not the Court.  The Motion is accordingly denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

Defendants Anthony Stone and Leslie Brady's Amended Motion for Summary Judgment (Doc. # 41) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 15th day of September, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:  All Counsel of Record