```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                       TAMPA DIVISION
```

LUANNE ESPOSITO,

    Plaintiff,

v.                                     CASE No.: 8:14-cv-2414-T-33EAJ

ANTHONY STONE and LESLIE BRADY,

    Defendants.
_____/

**<u>ORDER</u>**

This matter comes before the Court pursuant to Plaintiff Luanne Esposito's Motion for New Trial (Doc. # 85), which was filed on December 18, 2015. Defendants Anthony Stone and Leslie Brady filed a response in opposition on January 4, 2016. (Doc. # 88). After careful review, this Court denies the Motion.

**I.  <u>Background</u>**

Esposito was arrested for assault on a law enforcement officer on June 6, 2012, after consuming multiple adult beverages. (Esposito Aff. Doc. # 42-1 at ¶¶ 2-3). On that evening, law enforcement officers responded to a disturbance and encountered Esposito. (Police Report Doc. # 41-1 at 3). The Police Report for these events indicates:

> [D]uring the course of the encounter Ms. Esposito approached three separate times, all of which I was forced to verbally advise Ms. Esposito to step back from my person as she was becoming aggressive by her actions.  Ms. Esposito then turned her

> attention to Officer Rhind and walked towards him in a hostile manner.  Officer Rhind used one hand to stop Ms. Esposito's actions and push her back from his person. . . .  Ms. Esposito took approximately two steps to her rear and then began to approach Officer Rhind again.  I observed Ms. Esposito's actions were hastened as she moved toward Officer Rhind in what I felt was a threatening manner.  I observed Ms. Esposito's right arm angled at a 90 degree angle as she approached Officer Rhind, therefore leading me to fear Ms. Esposito was going to strike Officer Rhind.  I reached out and detained Ms. Esposito's arms to stop her actions.  I advised Ms. Esposito she was going to be detained due to her actions, however, she attempted to pull away from my grasp.  Ms. Esposito then physically attempted to jerk her arms away from my grasp as I attempted to place her into handcuffs.  Ms. Esposito continued to resist my actions to detain her, and on multiple trys [sic] she attempted to free her arms from my grasp.  Ms. Esposito then began to turn her body to gain an advantage, therefore I redirected Ms. Esposito to the ground where I handcuffed her without incident.

(Id. at 3-4).

Esposito, a retired law enforcement officer who was 54 years old at the time of the incident, alleges that after she was taken into custody that she was punched in the face and otherwise assaulted by Defendants Stone and Brady. Among other contentions, she alleges that the Defendant police officers subjected her to violent floggings and beatings while she was not resisting. Esposito has filed an affidavit in which she claims that Officer Stone "sucker

2

punched" her in the left eye, knocking her to the ground, while she was being fingerprinted. (Esposito Aff. Doc. # 42-1 at ¶ 4). Esposito also maintains that "while [she] was on the ground, Officer Stone began punching [her] repeatedly to the point where [she] briefly blanked out. . . . Officer Brady also jumped in, forcefully slamming [her] face into the cement floor, and also punching [her] repeatedly, all while Officer Stone continued to punch [her]." (Id. at ¶¶ 5-6). Esposito also states that "[a]fter Officers Stone and Brady beat me up, I was then escort[ed] by a group of corrections officers, including Officers Stone and Brady, but slammed to the ground again for no reason. Several corrections officers jumped on me while I was on the ground, and were laying on me while I was being hit repeated[ly] in my body and legs." (Id. at ¶ 7).

Esposito also asserts that she was "tightly handcuffed, shackled and strapped into [a] restraint chair for almost four and one-half hours." (Id. at ¶ 10). She remarks that she was "unable to move anything other than [her] head, fingers, and toes." (Id.). She alleges that while immobilized in a restraint chair, "on at least five occasions, Officer Stone returned to the room where [she]

3

was strapped into the restraint chair and *forcefully* shoved [her] head down, with [her] face toward [her] chest, causing [her] to experience significant physical pain." (Id. at ¶ 12)(emphasis in original). She indicates that she received injuries to her entire body, including to her eye, shoulder, ankle, arms, and legs. (Esposito Aff. Doc. # 42-1 at ¶ 22).

Ultimately, Esposito entered into a deferred prosecution agreement, and on November 1, 2012, the Assistant State Attorney filed a Notice reflecting that "criminal charges [would] not be filed." (Doc. # 42-3). On September 24, 2014, Esposito filed an action against Officers Brady and Stone (Doc. # 1) and filed a two count Amended Complaint against Officers Brady and Stone pursuant to 42 U.S.C. § 1983 for excessive use of force on October 27, 2014. (Doc. # 12).

Defendants filed a Motion for Summary Judgment (Doc. # 41), which this Court denied on September 15, 2015. (Doc. # 47). A jury trial occurred during the week of November 16, 2015. The jury rendered its verdict on November 20, 2015, finding in favor of Defendants on all counts. (Doc. # 77). At this juncture, Esposito has filed a Motion for a New Trial under Rule 59(a)(1)(A) of the Federal Rules of Civil

4

Procedure. The Court denies the Motion consistent with the following analysis.

**II.  Analysis**

Rule 59 of the Federal Rules of Civil Procedure governs motions for a new trial and generally provides that a new trial may be granted "on all or some of the issues--and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Id.

The Supreme Court noted that a party may seek a new trial on grounds that "the verdict is against the weight of the evidence, that damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940).  The Eleventh Circuit has emphasized that "new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great – not merely the greater – weight of the evidence." Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001).

Here, Esposito seeks an new trial based on the argument that "over Esposito's objections, Deputies Stone and Brady were permitted to repeatedly introduce testimony and engage in a line of questioning concerning the criminal charge of assault on a law enforcement officer . . . which led to the arrest and Esposito subsequently becoming a detainee at the Manatee County Jail." (Doc. # 87 at 2). Esposito also takes issue with defense counsel referencing the charge of assault on a law enforcement officer during the closing argument phase of the trial. (Id.). In addition, Esposito contends that a new trial is warranted because Investigator Dooley "was permitted to testify about his purported criminal investigation of Deput[y] Stone to determine whether he battered Esposito." (Id.).

Esposito characterizes the testimony in question as irrelevant and also argues that its unfair prejudice significantly outweighed its probative value under Federal Rule of Evidence 403, which states that "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

6

evidence." After due consideration, this Court disagrees with Esposito and denies her request for a new trial.

In advancing her arguments, Esposito principally relies on Brown v. Miller, 631 F.2d 408 (5th Cir. 1980); Aetna Casualty and Surety Company v. Gosdin, 803 F.2d 1153 (11th Cir. 1986); and Ad-Vantage Telephone Directory Consultants, Inc. v. GTE Directories Corp., 37 F.3d 1460 (11th Cir. 1994), which are each readily distinguishable.

To begin, in Brown, the plaintiff police officer sued the defendant town mayor pursuant to 42 U.S.C. § 1983 because the mayor, who also owned the town telephone company, withheld the police officer's paychecks based on the police officer's failure to pay his delinquent telephone bill. 631 F.2d at 409-10. After considering the evidence, which included un-redacted town board meeting minutes, the jury found for the police officer and awarded punitive damages against the mayor. Id. at 412. On appeal, the Fifth Circuit reversed the trial court's admission into evidence of un-redacted town board meeting minutes. Id. Apparently, those minutes contained a discussion of the police officer's paycheck issue (which the trial court circled in red to focus the juror's attention); however, the minutes also

7

contained a discussion of allegedly criminal conduct perpetrated by the mayor that was completely unrelated to the issue of withholding the police officer's paychecks. Id. The Fifth Circuit determined that the "offending paragraph" was "clearly inadmissible and greatly prejudicial," mandating a reversal and a new trial. Id. at 413.

In contrast, the brief testimony regarding Esposito's arrest for assault on a law enforcement officer, admitted to place the sequence of events into a factual context to assist the jury in understanding the facts of the case, is not akin to the accusations of illegal conduct memorialized in town board meeting minutes against the mayor defendant in Miller. Within hours of being arrested for assault on a law enforcement officer, Esposito claims that she was battered and beaten by the Defendant police officers in this case. Although Esposito characterizes her arrest for assault on a law enforcement officer as irrelevant, it is a piece of the puzzle that the jury considered when addressing the factual issues presented during the trial.

Esposito's reliance on Gosdin is similarly unavailing. There, the Eleventh Circuit reversed a jury's verdict in

favor of the insurer in a "typical fire insurance case in which the insurance company claimed that the policyholder committed arson." 803 F.2d at 1154. During the trial, the insurer introduced testimony that "pimping, pandering, and drug charges" had been brought against the policyholder in unrelated criminal proceedings. 803 F.2d at 1159. The Eleventh Circuit concluded that evidence of the pimping, pandering, and drug charges, "none of which apparently led to convictions, may well have had an unfair influence on the deliberations of the jury." Id. Thus, "[b]ecause of the nature of the charges and their lack of relevance to the facts at issue in the case, it was error to admit the testimony about them." Id.

This analysis does not carry over to Esposito because her arrest for assault on a law enforcement officer is factually and temporally linked to the conduct she complains of in her suit.

Likewise, in Ad-Vantage, the Eleventh Circuit reversed a jury's verdict of no damages in a tortious interference action after finding that an expert witness was prejudicially cross examined regarding his personal background, including his bankruptcy filing as well as his

voluntary surrender of his law license in connection with allegations of forging an endorsement on a client's check, among other improprieties. 37 F.3d 1460. The Eleventh Circuit underscored that "seeking discharge in bankruptcy does not show a disregard for truth that would cast doubt on a witness's veracity" and held that "after the jury heard this inadmissible evidence, the magistrate judge should have granted a new trial." Id. at 1465.[1]

In contrast, the testimony elicited regarding Esposito's arrest for assault on a law enforcement officer was innocuous, was not unfairly prejudicial, and was relevant to the issue of whether she posed a danger to police officer safety or otherwise posed a security risk during her detention. Here, the jury was asked to determine whether the alleged force used against Esposito was excessive. In making this determination, the jury was instructed that they could consider a non-exhaustive list of factors that included "the severity of the security problem at issue" and the "threat reasonably perceived by the officer." (Jury Instructions Doc. # 83 at 9). Even if

---

[1] Esposito also refers to FIGA v. RVMP Corp., 874 F.2d 1528 (11th Cir. 1989) and Williams v. Cambridge Mutual Fire Insurance Company, 230 F.2d 293 (5th Cir. 1956). Both cases stem from insurance actions in which arson was alleged, and both are factually and procedurally inapposite.

10

Esposito was eventually cleared of the charge of assault on a law enforcement officer, that charge was still pending when Esposito contends the Defendants utilized force against her, and the police officers at the jail, particularly the Defendants, considered that information in assessing whether she posed a security risk or risk to officer safety.

In addition, it should be noted that Esposito does not offer the Court any citations to the record or a detailed description of the testimony at issue (particularly Investigator Dooley's testimony). Relying on its memory of the trial (and without the benefit of detailed submissions from either Esposito or Defendants), the Court determines that the testimony in question was not unduly prejudicial nor was it irrelevant so as to warrant a new trial. Thus, the Motion is denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiff Luanne Esposito's Motion for New Trial (Doc. # 85) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida this 19th day of January, 2016.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

12